**Anna R. YOUNG, Plaintiff-Appellant,**

**v.**

**Richard SCHWEIKER \*, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 81–4065.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1982.

Decided July 2, 1982.

of the U. S. Department of Health and Human Services.

Elizabeth Hemmer, Legal Center For The Elderly And Disabled, Sacramento, Cal., for plaintiff-appellant.

Alan M. Grochal, Dept. of Health and Human Services, Baltimore, Md., argued, for defendant-appellee; William B. Shubb, U. S. Atty., Sacramento, Cal., on brief.

Before FARRIS, FERGUSON, and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Appellant seeks reversal of the decision of the district court denying restoration of her Supplemental Security Income (SSI) benefit levels. We affirm.

The facts are undisputed. Appellant had established her own household in a residence owned by one of her children, and paid less than fair market value in rent. The Secretary of Health, Education, and Welfare (now Health and Human Services) determined that the difference between the rent paid and the fair market value constituted in-kind income, and therefore reduced appellant's SSI benefits in accordance with regulations promulgated under Title XVI of the Social Security Act (SSA), §§ 1601–1634, 42 U.S.C. §§ 1381–1383c (1976). The reduction was limited, under the regulations, to one-third of appellant's prior benefit level, although the rent differential was greater than that amount.

Appellant first argues that the difference between rent paid and fair market

value should not constitute income under 42 U.S.C. § 1382b (1976). The Ninth Circuit has already approved the Secretary's practice of attributing in-kind income to persons paying reduced rent. *Antonioli v. Harris*, 624 F.2d 78 (9th Cir. 1980). Appellant has failed to distinguish this case from her own. We find the imputation of income in rental situations to be consistent with the purpose of the SSA. *Usher v. Schweiker*, 666 F.2d 652, 657–58 (1st Cir. 1981). And we also agree with the *Usher* court that this imputed income is "actually available" within the meaning of the "longstanding welfare policy that 'only such income as is *actually available* for current use on a regular basis will be counted in determining a welfare claimant's income.' *See* 45 C.F.R. § 233.-20(a)(iii)(c)." 666 F.2d at 655.

■ Appellant argues further that the application of the presumed value rule of 20 C.F.R. § 416.1125(d) (1980) is arbitrary, capricious, and an abuse of discretion. We disagree. The presumed value rule of section 416.1125(d) provides that any support and maintenance received in kind is unearned income and reduces the amount of benefits, but the "maximum value of such support and maintenance is presumed to be that amount which ... would result in payment [of benefits] at two-thirds of [the maximum benefit level]." The presumed value rule is merely a rational attempt to limit the reduction in benefits attributable to in-kind income.

■ Finally, we find no merit in appellant's contention that her equal protection rights under the fifth amendment due process clause were violated. *See Usher v. Schweiker*, 666 F.2d at 661. We agree with the *Usher* court that "[a] legislature may address a problem 'one step at a time' ... *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489 [75 S.Ct. 461, 465, 99 L.Ed. 563] (1955)." *Usher*, 666 F.2d at 661 (quoting *Jefferson v. Hackney*, 406 U.S. 535, 546–47, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285, 296 (1972)). Although we may believe that some inequities are caused by such step-wise action, they must be redressed by Congress.

AFFIRMED.

FARRIS, Circuit Judge, concurring:

Young's main argument is that in-kind income should be imputed only to the extent that what she pays is less than the fair market value of "basic" housing. In other words, to the extent her basic housing needs are being met by her son's generosity, Young would acknowledge the receipt of in-kind income, but to the extent that her son's generosity exceeds her basic housing needs, she would not.

Young's position is supported by the Secretary's definition of income, 20 C.F.R. § 416.1102(a) (1980). If income by definition is limited to the receipt of property which can be applied to meeting "*basic* needs for food, clothing and shelter," then presumably in-kind support and maintenance income, as a subset of all income, also must be limited to the receipt of "basic needs" food, clothing, and shelter.

For example, Young is paying $140.00/mo. to live in a house with a fair market rental value of $225.00/mo. Assuming her basic shelter needs would be satisfied by a one bedroom apartment, that the fair market rental value of such would be $150.00/mo., and that she is not permitted to sublet space in her house to take advantage of the $225.00/mo. fair market rental value, then only $10.00 of in-kind income should be imputed. From an administrative standpoint, this would mean that in addition to being able to rebut the presumed maximum value rule, Young should be given an opportunity to rebut the fair market value assessment rule of 20 C.F.R. § 416.1125(a) (1980).

Young's argument is consistent with the purpose of the SSI program, which is to pay benefits only to the extent that an individual's basic subsistence needs are not being met from other sources. 3 U.S.Code Cong. & Adm.News 4989, 5132–44 (1972); *Wynn v. Harris*, 494 F.Supp. 878, 881 (W.D.Tenn. 1980). Given this purpose, the focus should be on the extent to which basic needs are being met by other sources, and not on an abstract gap between an estimated fair

market rental value and the amount actually being paid. *See Antonioli v. Harris*, 624 F.2d 78, 80 (9th Cir. 1980):

> When Congress defined unearned income as "support and maintenance furnished in cash or in kind," § 1382(a)(2)(A), it contemplated that a reduced entitlement would be paid to those whose *essential needs* were being satisfied by other means. (Emphasis added.)

In *Antonioli* the fair market rental value of the recipient's house was only $75.00. The recipient paid $24.80 in the form of maintenance and property taxes. It seems likely that the full difference helped to satisfy basic housing needs. Therefore, there probably was no point in raising the argument now made by Young.

The impact of the Secretary's more aggressive approach is quite clear in Young's case. She could not afford to pay the full fair market rental. Nor could she accept the reduction in benefits imposed by the Secretary and still meet her other basic needs. She could not convert the extra bedroom (or nice neighborhood or whatever else made the fair market rental value of her residence $225.00) into food or clothing. As a result, she was forced to go into government subsidized housing.

Young's argument is consistent with 42 U.S.C. § 1382b, which excludes the value of a person's home when determining whether such person's resources exceed the limits for eligibility. The exclusion of the home avoids disincentives to home ownership in recognition that home ownership minimizes dependency and encourages self-support. But if the recipient gives her house to a son and continues to live there, suddenly it causes a reduction in her benefits pursuant to § 416.1125(a).

Consider also the hypothetical posed by the magistrate in his Findings of Fact, Conclusions of Law and Recommendation in *Ross v. Califano*, CV No. 77–2245–F(G) (C.D.Cal. Aug. 8, 1979). The magistrate asked whether a $50.00 can of caviar constitutes $50.00 in maintenance. The magistrate suggested that the value assigned to the can of caviar should be more in line with the cost of equivalent food within the recipient's means, such as a $.79 can of sardines.

I have reluctantly joined the majority in this case because I agree that the above-summarized support for Young's argument is not sufficient to overcome the usual deference due to an agency's statutory interpretation (although the inconsistency between 20 C.F.R. § 416.1102(a) (1980) and 20 C.F.R. § 416.1125(a) (1980) may undercut somewhat the usual considerable deference due). However, the argument is not insubstantial. Nor is the hardship imposed on Young insubstantial. She has been forced out of private housing and into government housing. I write separately in part to underscore the negative effect of the Secretary's interpretation of the regulations, at least in cases like this one. I deem it unfortunate that those persons who are attempting to privately meet their needs appear to suffer a penalty. I recognize that without a statutory or constitutional violation, Young's concern must be addressed to the Congress, not the courts.