**Neima BORMEY, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 81–3315

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1983.

Agustin R. Guitart, Metairie, La., for plaintiff-appellant.

Louis J. Volz, III, Asst. U.S. Atty., New Orleans, La., for defendant-appellee.

Before RUBIN, JOHNSON and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from a summary judgment upholding the appellee's decision to reduce appellant's Supplemental Security Income benefits by one third pursuant to 42 U.S.C. § 1382a(a)(2)(A), because she was living in the household of her parents and receiving support and maintenance from them. The principal question is whether this statutory one-third reduction was applicable. We hold that it was not, as to a part of the time in issue, and remand the case for further proceedings.

I.

The material facts are undisputed. Appellant Neima Bormey ("Bormey") was born on January 10, 1958. She suffers from a degenerative disease of the legs and arms, which has rendered her permanently disabled, and she lives at home with her parents and two sisters. In July 1974, the district office of the Social Security Administration determined that Bormey was eligible for full Supplemental Security Income ("SSI") benefits as a disabled child. The administrative record shows that Bormey was paid full benefits because her parents told the district office that they had no income.

On November 8, 1977, when Bormey was 19, she made an application with the district office to be made the payee of her SSI benefits. On November 10, 1977, the district office, having learned that her father had worked and earned income as a painter for the past five years, notified Bormey that her SSI benefits were being suspended effective December 1977. The district office maintained that she was ineligible to receive those benefits because her father's income was deemable to her since she was under 21 and a student.

Bormey, who was represented by counsel and continued to be throughout all the subsequent administrative proceedings, requested a hearing before an administrative law judge ("ALJ"). On August 19, 1978, the ALJ ordered reinstatement of her benefits. He found that Bormey was an adult, and was not a regular student, and that, as such, her father's income was not deemable to her.[1] No party has challenged this determination. The ALJ remanded the case to

---

1. Under the regulations, "a child under age 21" living with one or both parents may have "deemed" to the child the income of a parent who is ineligible for SSI benefits. *See* 20 C.F.R. § 416.1165 (1982). Under section 416.-1101 (1982) a "child" is defined as an unmarried person, not the head of a household, who either is "under age 18 or is under age 22 and a student." So far as is here relevant, these same regulatory provisions were applicable to Bormey at all pertinent times. Since Bormey was unmarried, was not the head of a household, was living with her parents, and was over 18 and under 21, her status as a "child" whose father's income could be "deemed" to her depended on whether she was "a student." She attended school, but did so irregularly. The ALJ determined that her school attendance was not sufficiently regular so as to constitute her a "student"; since she was over 18 and not a "student," she was not "a child"; since she was not a "child" her parents' income could

the district office for recalculation of benefits.

On October 2, 1978, the district office, following the August 1978 remand by the ALJ, determined that because Bormey was not contributing any money toward the household expenses, she was living in the household of her parents and receiving support and maintenance from them, and that accordingly the SSI benefits payable to her commencing in December 1977 must be reduced by one third pursuant to 42 U.S.C. § 1382a(a)(2)(A) and the then implementing regulation, 20 C.F.R. § 416.1125 (now sections 416.1130–416.1145).

Bormey had been paid no SSI benefits during the period December 1977 through September 1978. In October 1978, she was paid in a lump sum ($1,208.58) benefits, reduced by one third on account of the support and maintenance she had received, for that period, and monthly payments to her were resumed at the rate of $126.27, also reflecting the one-third reduction.[2]

On January 22, 1979, Bormey requested another hearing before an ALJ. At this hearing, which was held on May 7, 1979, both Bormey and her father testified that before her benefits were terminated, she contributed $100 a month toward the household expenses; that she lived in her parents' house with her mother and father and two sisters; that during the time her benefits were terminated, she had no income and was therefore unable to make any contributions; that after her benefits were resumed in October 1978, she again contributed $100 a month to the household expenses; that monthly household expenses totaled $697.10, of which $400 was for food and the balance for mortgage payments and utilities; that her pro rata share of the total household expenses was $139 per month; and that were she to receive full benefits, she would pay her pro rata share of all the household expenses.

The ALJ held that the one-third statutory reduction in Bormey's benefits was proper, and his decision was affirmed by the Administration's Appeals Council, thus becoming a final decision of the appellee, the Secretary of Health, Education, and Welfare (now the Secretary of Health and Human Resources), who administers the SSI program.

Having exhausted her administrative remedies, Bormey filed suit against the appellee in federal district court under 42 U.S.C. § 405(g) seeking judicial review of the adverse decision. Both parties filed motions for summary judgment. The district court referred the matter to a magistrate, who conducted a hearing and recommended that appellee's motion for summary judgment be granted. The district court accepted the magistrate's recommendation and rendered summary judgment for appellee.[3]

## II.

Our review is ordinarily limited to determining whether the record as a whole contains substantial evidence to support the appellee's findings. *Thomas v. Schweiker,*

not be "deemed" to her, and denial of her benefits on the basis of such "deeming" was accordingly held to be erroneous.

2. Although it is undisputed that Bormey received full SSI benefits from July 1974 to November 1977, there is no direct evidence of the dollar amount of those payments as actually made to Bormey. However, it is indicated that full benefits were to be at the following monthly rates: from 7/1/74 to 6/30/75, $146.00; from 7/1/75 to 6/30/77, $157.70; from 7/1/77 to 6/30/78, $177.80; from 7/1/78, $189.40.

3. The district judge's April 27 order granting appellee's motion for summary judgment, and denying that of appellant, recites that notice of the filing (on April 9) of the magistrate's Find-

ings and Conclusions was given the parties and "no objections thereto have been filed." This, however, does not prevent review of the judgment below under *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982) (*en banc*). There is no showing that the parties had been informed that objections must be filed within ten days of filing of the magistrate's report, as required by *Nettles. Id.* at 408. Moreover, "[t]he *Nettles* bar only prevents one from challenging *factual* findings that have been adopted or accepted by the district court." *Tijerina v. Estelle,* 692 F.2d 3, 5 n.1 (5th Cir.1982). Here, appellant does not challenge the magistrate's, or the district court's, resolution of any disputed *factual* issues.

666 F.2d 999, 1001 (5th Cir.1982). However, we must also determine whether appellee applied the proper legal standard in reducing Bormey's SSI benefits, and whether the proceedings below were conducted in conformity with the applicable statutes and regulations. *See Strickland v. Harris,* 615 F.2d 1103, 1108 (5th Cir.1980); *Ferran v. Fleming,* 293 F.2d 568, 571 (5th Cir.1961); *Chamberlain v. Schweiker,* 518 F.Supp. 1336, 1338 (C.D.Ill.1981).

The first question raised by Bormey is whether, upon becoming an adult, she had a right to the standard (or full) SSI payment without regard to any support or maintenance she had received, or was receiving, from her parents before or at the time she became an adult. Bormey, in effect, argues that unearned income received by a recipient while he or she is a child cannot be used to reduce SSI benefits once the recipient becomes an adult, even though after becoming an adult that income is still being received. We disagree.

The statutes which govern the SSI program plainly show it was Congress's intent that SSI benefits be paid only to the extent an individual's minimum income level is not being met from other sources. *See* H.R.

Rep. No. 92–231, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad. News 4989, 5135–36. *See also Weiss v. Schweiker,* 519 F.Supp. 763, 765 (S.D.N.Y. 1981). Under 42 U.S.C. § 1381a,[4] a disabled individual's eligibility for SSI benefits is determined "on the basis of his income and resources." Under 42 U.S.C. § 1382a,[5] income is defined as including both earned and unearned income, and unearned income includes "support and maintenance furnished in kind" to the individual. If the individual lives in the household of another and receives both maintenance and support from that person, then the amount payable to the individual is reduced by one third. 42 U.S.C. § 1382a(a)(2)(A).

It has long been recognized that in questions of statutory interpretation, the construction of a statute by an agency charged with its administration is entitled to some deference. *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 315 (5th Cir.1982). The appellee has interpreted these statutes to require that an individual's income be an important factor in determining his or her initial or continuing eligibility for SSI benefits and the amount thereof. *See* 20 C.F.R. §§ 416.202 and 416.203.[6] Eligibility for SSI

---

4. 42 U.S.C. § 1381a provides:

"§ 1381a. Basic entitlement to benefits

"Every aged, blind, or disabled individual who is determined under part A to be eligible on the basis of his income and resources shall, in accordance with and subject to the provisions of this subchapter, be paid benefits by the Secretary of Health, Education, and Welfare."

5. 42 U.S.C. § 1382a provides, in part:

"§ 1382a. Income; definition of earned and unearned income; exclusions from income

"(a) For purposes of this subchapter, income means both earned income and unearned income; and—

". . .

"(2) unearned income means all other income, including—

"(A) support and maintenance furnished in cash or kind; except that (i) in the case of any individual (and his eligible spouse, if any) living in another person's household and receiving support and maintenance in kind from such person, the dollars amounts otherwise applicable to such individual (and spouse) as specified in subsections (a) and (b) of section 1382 of this title shall be re-

duced by 33⅓ percent in lieu of including such support and maintenance in the unearned income of such individual (and spouse) as otherwise required by this subparagraph, . . . ."

6. 20 C.F.R. § 416.202 (1982) provides:

"§ 416.202 Who may get SSI benefits.

"You are eligible for SSI benefits if you meet all of the following requirements:

"(a) You are—

"(1) Aged 65 or older (Subpart H);

"(2) Blind (Subpart I); or

"(3) Disabled (Subpart I).

"(b) You are a resident of the United States (§ 416.1602), and—

"(1) A citizen or a national of the United States (§ 416.1603);

"(2) An alien lawfully admitted for permanent residence in the United States (§ 416.-1604); or

"(3) An alien permanently residing in the United States under color of law (§ 416.-1605).

"(c) *You do not have more income than is permitted* (Subparts K and D).

"(d) You do not have more resources than are permitted (Subpart L).

benefits and the amount payable is therefore based on the actual need of the individual whether at the time he or she makes an initial application for benefits or whether he or she already receives them. It follows that the actual needs of a recipient will be considered even when he or she becomes an adult. Thus, the income received by a child, which he or she still receives after becoming an adult, will be considered in determining eligibility for, and the amount of, SSI benefits.

The "benefit anomalies" described by Bormey in her brief which may occur as a result of this construction flow from the differences in the level of generosity of the applicant's or recipient's relatives or friends, and the statute was fashioned to recognize those generosity differences in determining initial and continuing eligibility for, and the amount of, SSI benefits. *See Usher v. Schweiker,* 666 F.2d 652, 659 (1st Cir.1981). We hold that the unearned income being received by a recipient at the time he or she becomes an adult must be considered by the Social Security Administration in determining eligibility for, and the amount of, SSI benefits at that time.

The next question raised by Bormey is whether the unearned income, in the form of support and maintenance, received by her from her parents triggered the statutory one-third reduction in her SSI benefits.

Before October 3, 1980, the application of the statutory one-third reduction was governed by 20 C.F.R. § 416.1125, which was originally adopted on January 29, 1974. 39 Fed.Reg. 3674 (1974).[7] This regulation was,

"(e) You file an application for SSI benefits (Subpart C)." (Emphasis added.)
20 C.F.R. 416.203 (1982) provides:
"§ 416.203 Initial determinations of SSI eligibility.
"(a) *What happens when you apply for SSI benefits.* When you apply for SSI benefits we will ask you for documents and any other information we need to make sure you meet all the requirements. We will ask for information about your income and resources and about other eligibility requirements and you must answer completely. We will help you get any documents you need but do not have.
"(b) *How we determine your eligibility for SSI benefits.* If you apply for SSI benefits in the first month of a calendar quarter, we determine your eligibility for the whole calendar quarter. If you apply for benefits in the second or third month of the calendar quarter, we determine your eligibility for SSI benefits separately for each month in that calendar quarter. After the first quarter, we determine your eligibility for whole calendar quarters."
*See also* 20 C.F.R. § 416.410 (1982).

7. The original (January 1974) version of 20 C.F.R. § 416.1125 provided:
"§ 416.1125 Unearned income; support and maintenance.
"(a) Unearned income includes support and maintenance furnished in cash or in kind. *Support and maintenance may generally be defined as room and board,* and would also include other incidentals necessary to an individual's normal sustenance.
"(b) *In the case of any eligible individual* (or eligible individual and eligible spouse) *living in another person's household and receiving support and maintenance in kind from* such person, such individual's (or eligible individual and eligible spouse) *payment* standard of $130 per month (or $195 per month for an eligible individual and eligible spouse) *will be reduced by one-third in lieu of including the value of such support and maintenance as unearned income to the individual* (or eligible individual and eligible spouse).
"(c) *Such one-third reduction* in the payment standard *will apply only for months wholly spent in the household of another person.* Thus, the reduction is made *beginning with the first full calendar month in which an individual* (or eligible individual and eligible spouse) *lives in another person's household and ends with the last such full calendar month.*
"(d) *Such one-third reduction will apply regardless of whether the individual* (or eligible individual and eligible spouse) *is making any payment for support and maintenance (room and board)* to the person in whose household he is living.
"(e) Such one-third reduction in the payment standard will not apply where an individual (or eligible individual and eligible spouse) are living in a commercial establishment (e.g., rooming or boarding house) or institution. 'Another person's' household refers to the household of a private individual.
"(f) *Such one-third reduction in the payment standard will not apply where only support or maintenance (i.e., room or board) is furnished in kind, both support and maintenance must be furnished for such reduction to apply. Where only support or maintenance is furnished in kind, the value of such support or maintenance will be included as unearned income in accordance with paragraph (a) of this section.*

however, amended on July 7, 1978, and subpart K of the amended regulation provided that its provisions would be effective with January 1974, unless specifically indicated to the contrary. Effective October 3, 1980, the regulation was revised and reorganized. 45 Fed.Reg. 65541 (1980). The substantive provisions, however, remain essentially the same as the 1978 version and now appear as sections 416.1130–416.1145.

Section 416.1125, as amended in 1978, was in effect when Bormey's case was heard by the ALJ in May 1979.[8] The ALJ, however, applied the original (1974) version, and held that the statutory one-third reduction was applicable. This holding was based on the ALJ's finding that Bormey's contribution was less than her pro rata share of the household expenses, and on his conclusion

that she was therefore living in the household of her parents and receiving support and maintenance from them. The magistrate who considered the motions for summary judgment on October 15, 1980, applied the amended (1978) version of section 416.-1125, but he also determined that Bormey's benefits should be reduced by the statutory one-third reduction.

Applying the amended regulation to the facts found by the ALJ, we hold that although there is substantial evidence to uphold his factual findings, both the ALJ and the magistrate erred in their legal conclusion that the SSI benefits payable to Bormey were subject to the statutory one-third reduction.

■ Under section 416.1125(b)(1)[9] as amended in 1978, the standard payment

---

"...

"(h) Such one-third reduction in the payment standard will not apply to the payment standard of any individual who is subject to the provisions of § 416.1185 and is living in the household of the person from whom income is or would be deemed." (Emphasis added.)

8. The provisions of section 416.1125(b), as amended in 1978, became effective October 1, 1976 for all new and pending claims and for all redetermined cases which do not receive lower payments solely because of the amendment. Even if revised subsection (b) did not apply, the result in Bormey's case is the same under original subsection (b) insofar as the inapplicability of the statutory one-third reduction is concerned. *See* section 416.1124(f) of original regulation. Under either version, subsection (d) of the amended (1978) section 416.1125, which became effective with SSI payments for December 1974, applied (*see* note 12, *infra*).

9. 20 C.F.R. 416.1125(b), as amended in 1978, provided:

"§ 416.1125 Unearned income; support and maintenance.

"...

"(b) *One-third reduction for individual living in another person's household—(1) General. The standard payment amount for an eligible individual* (or both members of a couple as defined in § 416.120(c)(5)), *who lives in another person's household and receives support and maintenance in kind from such person, will be reduced by one-third in lieu of determining the value of such support and maintenance as unearned income* to the eligible individual (or couple). The one-third reduction when applicable, is made *beginning*

*with the first full calendar month in which an eligible individual* (or couple) *lives in another person's household and receives both food and shelter from that other person,* and ends with the last such full calendar month. *The one-third reduction* in the standard payment amount *applies regardless of any payment the individual (or couple) may make toward the support and maintenance unless, effective October 1976, that payment meets the requirements of paragraph (b)(3)(iv) of this section.* Effective with amounts payable for December 1974, when the one-third reduction applies, any additional in-kind support and maintenance an eligible individual (or couple) receives is not counted as income regardless of the source.

"(i) For purposes of this paragraph (b), *the one-third reduction applies for a particular month only if an eligible individual lives in another person's household throughout a calendar month* except for temporary absences (see paragraph (j) of this section) *and receives in-kind support and maintenance in the form of both food and shelter from the person* in whose household he or she lives. An individual may live in two or more households during an entire month and be subject to the one-third reduction if he or she does not maintain his or her own household during this period.

"...

"(iii) *Where the one-third reduction is not applicable, but the eligible individual* (or couple) *is receiving in-kind support and maintenance which is not excluded from income* under the provisions of this subpart K, *such support and maintenance is valued as described in paragraphs (c) through (i) of this section.

amount for an eligible individual who (1) lives in another person's household and (2) receives *both* support and maintenance in kind from such person, is to be reduced by

"(2) *Another person's household.* A household refers to a personal place of residence which is not a commercial establishment (e.g., a rooming or boarding house), a noninstitutional care home as defined in § 416.1125(c), or an institution as defined in § 416.231(b). An eligible individual (or couple) will be presumed to be living in another person's household (except as provided by paragraph (b)(3)), whenever the individual (or couple) lives in a household which has at least one other member who is not:

"(i) The individual's spouse (as defined in § 416.1005); or

"(ii) A minor child; or

"(iii) A person whose income is deemable to the individual under § 416.1185 (published as a notice of proposed rulemaking with interim effect at 42 FR 3316, January 18, 1977) or § 416.1190.

"(3) *Not another person's household. An individual is not considered to be living in another person's household when:*

"(i) The eligible individual or a living-with spouse has an ownership or life estate interest in the home; or

"(ii) The eligible individual or a living-with spouse is liable to the landlord for payment of any portion of the rental charges; or

"(iii) The eligible individual is living in a substitute home in the form of a noninstitutional care situation as defined in § 416.-1125(c)(5); or

"(iv) *The eligible individual is paying at least a pro rata share of the average monthly total household operating expenses* as described in paragraph (b)(5) of this section.

"(4) *Receiving in-kind support and maintenance. When an eligible individual (or couple) lives in another person's household* (as described in paragraph (b)(2)), *he or she will be presumed to be receiving in-kind support and maintenance in the form of both food and shelter from the person in whose household he or she lives, and the one-third reduction will apply unless the presumption is rebutted as provided in paragraph (b)(6).*

"(5) *Total household operating expense.* Total household operating expenses means the average of total monthly expenditures for food, rent or mortgage payments, real property taxes, heating fuel, gas, electricity, water, sewer services and garbage collection services. The term refers only to amounts actually expended by the household for the purposes specified in this paragraph (5); it does not include the value of any in-kind support and maintenance provided by a source external to the household. *A pro rata share of total household operating expenses is determined by dividing the monthly average of these expenses by the number of per-* sons in the household regardless of age or individual consumption of any of the items. Payment of an amount which is within $5 of the monthly pro rata share is considered to meet the pro rata requirement. A pro rata share is generally determined by averaging the specified household expenses for the 12-month period prior to determination. If independent or collateral verification is not available to establish payment of a pro rata share the eligible individual (or couple) shall state the reason therefor and submit other evidence of probative value.

"(6) *Rebuttal. Applicability of the one-third reduction may be rebutted by showing that an eligible individual:*

"(i) Does not live in another person's household; or

"(ii) Does not live in another person's household throughout a month; or

"(iii) *Does not receive both food and shelter from the person in whose household he or she lives. An individual who purchases (i.e., pays for) his or her own food,* or who receives food from someone other than the householder *is not receiving in-kind support and maintenance as required in paragraph (b)(4);* . . .

" . . .

"(7) *Deeming.* When an eligible individual and a person whose income must be deemed to the eligible individual under § 416.1185 (see paragraph (b)(2)(iii) of this section), or § 416.1190 both live in another person's household within the meaning of this paragraph (b), the deeming rules apply to the eligible individual in addition to the one-third reduction rules.

"(8) *Effective date.* The provisions set forth in this paragraph (b) are effective October 1, 1976. However, in the case of any recipient who receives a lower supplemental security income payment or becomes ineligible upon redetermination solely through the application of these rules (i.e., there has been no actual change in his or her living arrangement) the provisions are effective on the first day of the quarter following the redetermination.

"(c) *Household situations not included under paragraph (b) of this section. The reduction in the payment standard for living in the household of another and described in paragraph (b)(1) of this section will not apply in the following situations and support and maintenance provided in kind will be valued as provided herein and in paragraphs (d) and (e) of this section:*

"(1) *In the case of an eligible individual* (or eligible individual and eligible spouse) *who lives in another person's household and receives in-kind support and maintenance from*

one third, in lieu of determining the actual dollar value of such support and maintenance as unearned income to the eligible individual. This one-third reduction is statutory, 42 U.S.C. § 1382a(a)(2)(A),[10] and when applicable, is irrebuttable regardless of any payment the individual may make toward his or her support and maintenance. Section 416.1125(b)(1). *See also* 43 Fed. Reg. 29277, 29278–29279 (1978).

▪ The first question is whether Bormey lived in the household of another. An eligible individual is presumed to be living in another person's household whenever the household has at least one other member who is not the eligible individual's spouse, minor child, or a person whose income is deemable to the individual, section 416.1125(b)(2), *unless* the eligible individual has an ownership interest in the home, is liable to the landlord for payment of any portion of the rental charges, is living in a substitute home in the form of a noninstitutional care situation, or is paying at least a pro rata share of the average monthly total household operating expenses. Section 416.1125(b)(3).

The evidence shows that Bormey lived with her parents and two sisters; that none of their income was deemable to her; and that she failed to satisfy any of the exceptions of section 416.1125(b)(3). We therefore hold that the ALJ and the magistrate correctly determined that Bormey was living in the household of another.

▪ The second question is whether Bormey received *both* support and maintenance from her parents. Under section 416.1125(a),[11] support and maintenance in kind is defined as encompassing food, clothing, and shelter. When an eligible individual lives in another person's household he or she is presumed to be receiving in-kind support and maintenance in the form of both food and shelter from that person, and the one-third reduction applies unless the presumption is rebutted. Section 416.1125(b)(4). The applicability of the one-third reduction may be rebutted by showing, among other things, that an eligible individual does not receive *both* food and shelter from the person in whose household he or she lives. Section 416.1125(b)(6)(iii).

▪ Bormey proved that before her SSI benefits were erroneously suspended in De-

that other person in the form of food only or shelter only, but not both.

" . . .

"(3) In the case of an individual who is subject to the provisions of this part regarding the deeming of income (§ 416.1185 (published as a notice of proposed rulemaking with interim effect at 39 FR 2487 and amended at 42 FR 3316, January 18, 1977) or § 416.1190) and who is living in the household of the person from whom income is or would be deemed. In such case, any support and maintenance furnished by the person in whose household the individual is living is not counted as income.

"(4) In the case of an eligible individual (or eligible individual and eligible spouse) who lives in his or her own household, including a commercial establishment (e.g., rooming or boarding house).

"(5) In the case of an eligible individual (or eligible individual and eligible spouse) who has been placed in a noninstitutional care situation and receives nonexcludable in-kind support and maintenance. For purposes of this section, a noninstitutional care situation exists when: (i) an individual or couple is placed by a public or private agency under a specific program of protective placement

such as foster or family care; and (ii) the placement is in a private household which is licensed or otherwise approved by the placing agency to provide such care; and (iii) the placing agency retains responsibility for continuing supervision; and (iv) the person providing the care accepts payment from the individual, the placing agency, or some other party." (Emphasis added, except section headings.)

10. *See* note 5, *supra*.

11. 20 C.F.R. § 416.1125(a), as amended in 1978, provided:

"(a) *General.* Unearned income includes support and maintenance furnished in cash or in kind unless otherwise excluded under this subpart K. Support and maintenance in kind encompasses food, clothing, and shelter or any portion of any or all of such items. Unless otherwise specified herein, the value of in-kind support and maintenance refers to its current market value. For purposes of this subpart K, the term standard payment amount refers to the Federal payment rate as described in §§ 416.410–416.413."

cember 1977, and after they were resumed in October 1978, she contributed $100 a month toward the payment of the household expenses. The evidence shows that as of May 1979 the pro rata monthly cost of Bormey's food was $80 and that of her shelter was $59. The evidence does not indicate whether Bormey's $100 payment was earmarked for food or for shelter. This $100 amount, however, was sufficient to cover the entire cost of one item and part of the other. The reasoning of the appellee, the ALJ, and the magistrate presumes that the $100 payment covered only part of each. We reject this presumption. Where a payment is capable of covering the entire cost of each item (whether food or shelter) considered separately, as well as part of the other, we presume that it was intended as such, in the absence of any indication to the contrary. We hold that Bormey rebutted the presumption that the statutory one-third reduction applied by showing that she did not receive, without paying therefor, both food and shelter from her parents.

When an eligible individual lives in a household of another and receives from that person only food or shelter in kind, such support or maintenance is unearned income. Section 416.1125(d).[12] In such case, effective with payments for December 1974, the maximum value of such support or maintenance is presumed to be one third of the applicable payment standard. The individual may rebut this presumption by establishing that the current market value of such support or maintenance, less any payment he or she makes therefor, is lower than the presumed value. Section 416.-1125(d).

Because the ALJ and the magistrate erred in determining that the statutory one-third reduction applied, no determination was made as to whether, and if so to what extent, the then current market value of Bormey's food or shelter, less any payment made therefor, was lower than the presumed value. The case must therefore be remanded to the appellee for further proceedings to determine the proper amount of benefits due Bormey since October 1978, when she recommenced making her payments to her father.[13]

---

**12.** 20 C.F.R. § 416.1125(d), as amended in 1978, provided:

> "(d) *Valuation of support and maintenance for individuals in household situations. When* an eligible individual (or eligible spouse) lives in a household (i.e., is not in an institution), *the reduction in the payment standard described in paragraph (b) of this section is inapplicable,* and the provisions of §§ 416.1185 (see paragraph (c)(3)) and 416.-1190 do not apply, *any support and maintenance received in kind* but not received in lieu of cash wages (see § 404.429(c) of this chapter) *is unearned income.* In such cases effective with payments for December 1974, *the maximum value of such support and maintenance is presumed to be that amount which,* for an individual or a couple with no other income, *would result in payment at two-thirds of the applicable payment standard;* i.e., the value is presumed to be one-third of the payment standard, plus the exclusion applicable to unearned income. *This presumption will be applied in determining the benefits payable unless it is rebutted by the individual's establishing that the current market value of such support and maintenance, less any payment he makes therefor, is lower than the presumed value. This rule will apply in the following circumstances:*

> "(1) *When an eligible individual* (or eligible individual and eligible spouse) *lives in the household of another and receives from that other person only support or maintenance in kind* as described in paragraph (c)(1) of this section. . . .

> "(2) When an eligible individual (or eligible spouse) lives in his own household, including a commercial establishment, and receives support and maintenance in kind." (Emphasis added, except for section heading.)

**13.** Each party shall be afforded an opportunity to present additional evidence, if desired, on the question of the then current market value of the food and shelter furnished Bormey, less any payment made for same.

We express some doubt as to the validity of the *amount* of presumptive reduction of section 416.1125(d). When an individual living in the household of another pays the cost *neither* of his or her food *nor* of his or her shelter, the statutory one-third reduction applies. If the individual pays *either* for his or her food *or* for his or her shelter, one might logically assume that a rebuttable one-sixth (or other fraction smaller than one third) reduction in benefits would be in order. The appellee, however, presumes a full one-third reduction even though one item of support and maintenance is being paid by the individual. Unlike the statutory

As to the period from December 1977 through September 1978, when Bormey was unable to make any payments to her parents because of the erroneous suspension of her benefits, she claims that appellee is estopped to apply the statutory one-third reduction. Bormey argues that if she had been paid her benefits during this time she would have used them to continue her $100-a-month payments to her parents for her food or shelter.

There is some surface appeal to Bormey's argument, but we must reject it. At the May 1979 hearing Bormey, through her attorney, made it quite clear that she had not paid any of the lump-sum payment she received in October 1978 to her parents, and that she considered herself under no obligation to do so. Her position was that while her benefits were suspended she did not, expressly or impliedly, agree to reimburse her parents, either absolutely or conditionally on her receipt of benefits, for any of the food or shelter they furnished her during this period. Nor, according to her, did any such obligation arise as a matter of law.[14] Her estoppel argument is based on the premise that if she had timely received the benefit checks she would have used them to pay for her support or maintenance. But what she seeks to achieve by estoppel is to force the government to now put her in a better position than she would have been in if matters had proceeded as she says they should and would have but for the erroneous suspension of her benefits. Even if she had received full benefits ($1,611.52) throughout this ten-month suspension period, and had accordingly continued to pay $100 a month ($1,000) to her parents for support or maintenance, she would have been left with only $611.52,[15] as opposed to the $1,208.58 she eventually received in a lump sum and asserts she is entitled to fully retain. Bormey has not suffered any ultimate financial prejudice by reason of the erroneous suspension of her benefits.[16] Moreover, there is no assertion,

one-third reduction, there appears to be no statutory basis for this regulatory presumptive one-third reduction. On remand, we invite the appellee and Bormey to consider the validity of the presumptive one-third reduction of section 416.1125(d). Our doubts are apparently not shared by the Ninth Circuit, although it may not have directly addressed the above-indicated concerns. *Young v. Schweiker,* 680 F.2d 680, 682 (9th Cir.1982).

14. At the May 1979 hearing, Bormey's attorney stated to the ALJ:

"I think for the period in which the payments were suspended, I think the full benefit will be, got to be paid because the Administration is estopped from raising the issue that she was not contributing to household expenses, because the Administration with its action was claiming that position. But we don't raise in connection with that point any specific issues that claimant is going to repay Mr. Bormey [her father]. What we're trying to say is, from now on, if she gets full benefits, if she gets full benefit, she will contribute, she will contribute to the household expenses for instance starting from this point right now, not to the past. I think in the past we cannot go back and see was any obligation between the father and the claimant to pay or not to pay. They supported, at that time, without any obligation and nobody is asking for that money, I mean we're not asking for that money for claimant to repay Mr. Bormey. I think she's entitled to that during the period in which the payment[s] were suspended, she's entitled to the full benefits."

This position was never modified or retracted.

15. Indeed, to have been entitled to full benefits, without *any* reduction for the value of any unreimbursed food or shelter, she would have had to pay more than $100 a month, as the foregoing portions of this opinion reflect.

16. Nor have her parents been shown to have suffered legal prejudice as a result of such suspension. There was no claim or showing that they were legally obligated to support Bormey. Even if they were, the increased benefits Bormey seeks, she seeks for herself, not for them. *See* note 14, *supra.* Moreover, the administrative record reflects that Bormey successfully sought to have herself determined not a "child" in order to avoid having her father's income "deemed" to her, thus rendering her ineligible for any benefits. By its erroneous suspension of benefits, the government may have "imposed" upon the generosity of Bormey's parents, but a certain amount of such "imposition" is in any event inherent in the statutory scheme of reducing benefits for support and maintenance donated by others. The remedy for this instance of erroneous "imposition" on her parents is surely not to grant Bormey a greater net financial recovery than she could have possibly obtained had the error she complains of not occurred.

nor any indication in the record, that the suspension of benefits was for any invidious reason or consideration, or was anything other than a bona fide, and quite understandable, factual error. In these circumstances, we do not believe that the considerations of "justice and fair play," *United States v. Lazy F C Ranch,* 481 F.2d 985, 988 (9th Cir.1973), weigh so heavily as to authorize an estoppel against the government. *See Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); *Augusta Aviation, Inc. v. United States,* 671 F.2d 445, 448–50 (11th Cir.1982). Accordingly, we uphold the statutory one-third reduction of benefits applicable to the period December 1977 through September 1978, during which Bormey's parents, in whose house she lived, furnished her support and maintenance without any reimbursement.

We reverse the judgment of the district court and remand the case to that court with directions to further remand the case to appellee for a redetermination of Bormey's benefits for October 1978 and subsequent months in accordance with this opinion.

REVERSED AND REMANDED.